IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MISSOURI DEPARTMENT<br>OF SOCIAL SERVICES<br>221 West High Street<br>Jefferson City, Missouri 65101<br><br>           Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT<br>OF HEALTH AND HUMAN SERVICES<br>200 Independence Avenue, SW<br>Washington, DC 20201<br><br>           and<br><br>ALEX M. AZAR II<br>Secretary of the United States Department<br>of Health and Human Services,<br>in his official capacity,<br>200 Independence Avenue, SW<br>Washington, DC 20201<br><br>           Defendants. | Civ. No. 1:20-cv-3611 |

**COMPLAINT**

**INTRODUCTION**

1. The Medicaid program, codified at Title XIX of the Social Security Act ("SSA"), is "a cooperative endeavor in which the Federal Government provides financial assistance to participating States to aid them in furnishing health care to needy persons." *Harris v. McRae*, 448 U.S. 297, 308 (1980).

2. The Missouri Department of Social Services ("DSS," "Missouri," or "the State"), seeks review of a final administrative decision by the United States Department of Health and

Human Services ("HHS") Departmental Appeals Board ("Board") disallowing $487,351 in federal reimbursement for contraceptive drugs provided to Medicaid-eligible individuals during calendar years ("CY") 2009 and 2010. The HHS Departmental Appeals Board acts for the Secretary in disputes involving Medicaid disallowances. *See* 42 U.S.C. § 1316(e)(2)(A).

3.     Most of a State's medical assistance expenditures are reimbursable at the "federal medical assistance percentage," which in Missouri's case was approximately 73 percent in 2009 and 2010. However, Section 1903(a)(5) of the SSA provides that HHS shall reimburse a State for 90 percent of the amount expended which is "attributable to the offering, arranging, and furnishing . . . of family planning services and supplies." 42 U.S.C. § 1396b(a)(5).

4.     In the decision for which review is sought, the Board concluded that DSS was not entitled to reimbursement at 90 percent for contraceptive drugs which it could not establish were prescribed "for a family planning purpose," even though there was no question that all of the questioned expenditures were for contraceptives.

5.     Section 1903(a)(5) of the Social Security Act does not support a distinction between reimbursement for contraceptives expressly prescribed for family planning purposes and those that may have been prescribed for other purposes. Moreover, any such requirement would be contrary to sound medical practice, significantly intrude on patient privacy, and impede access to contraception, contrary to congressional intent.

6.     The HHS Departmental Appeals Board's decision upholding the disallowance of $487,351 in federal funds is arbitrary, capricious, an abuse of discretion, and not in accordance with either the text or the purpose of the Medicaid statute. The Court should set aside the Board's decision and the underlying disallowance.

## JURISDICTION AND VENUE

7. This action arises under Section 1116 of the Social Security Act, 42 U.S.C. § 1316(e)(2)(C), and Section 10 of the Administrative Procedure Act, 5 U.S.C. § 704. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361.

8. Venue is proper under 28 U.S.C. § 1391(e)(1) and 42 U.S.C. § 1316(e)(2)(C).

## PARTIES

9. Plaintiff Missouri Department of Social Services is the "single State agency" responsible for administration of the State of Missouri's participation in the federal Medicaid program. *See* 42 U.S.C. § 1396a(a)(5).

10. Defendant United States Department of Health and Human Services ("HHS") is the federal agency responsible for administering the Medicaid program.

11. Defendant Alex. M. Azar II is the Secretary of HHS and is responsible for the overall administration of the agency. He is sued in his official capacity.

## STATUTORY AND REGULATORY BACKGROUND

### The Medicaid Program and Medicaid Funding

12. Medicaid is a cooperative federal-state program in which the federal government provides financial assistance to participating States in connection with the provision of health care to lower-income individuals and families, referred to as "medical assistance." Under the federal Medicaid statute (Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*), States are entitled to federal reimbursement for their expenditures on medical assistance pursuant to a "state plan" approved by the Centers of Medicare & Medicaid Services ("CMS") within HHS. *See id.* § 1396a-b.

13. The federal government's share of a State's expenditures under the Medicaid program is called "federal financial participation" ("FFP"). 42 C.F.R. § 400.203; 45 C.F.R. § 95.4. States are entitled to FFP for a specified percentage of the actual costs they incur in providing health care to their Medicaid-eligible populations. *See* 42 U.S.C. § 1396b(a).

14. For most Medicaid program expenditures for healthcare services and supplies, the federal government reimburses States at the "federal medical assistance percentage" ("FMAP"), which varies by State based on per capita income and can range from a statutory minimum of 50 percent to a maximum of 83 percent. *Id*. §§ 1396b(a)(1), 1396d(b).

15. Using the statutory formula, Missouri's FMAP was initially calculated to be 63.19 percent for fiscal year ("FY") 2009 and 64.51 for FY 2010. 72 Fed. Reg. 67,306 (Nov. 28, 2007); 73 Fed. Reg. 72,052 (Nov. 26, 2008). However, it was temporarily increased to 73.27 percent through December 31, 2010, pursuant to the American Recovery and Reinvestment Act of 2009 ("ARRA"). *See* 74 Fed. Reg. 38630 (Aug. 4, 2009).

### The 90 Percent Match Rate for Family Planning Services and Supplies

16. The Medicaid statute authorizes FFP at rates higher than the FMAP for some expenditures. For example, States receive FFP at the rate of 90 percent for state Medicaid program expenditures "attributable to the offering, arranging, and furnishing . . . of family planning services and supplies." 42 U.S.C. § 1396b(a)(5); 42 C.F.R. § 433.10(c)(1).

17. Section 1905(a)(4)(C) of the Social Security Act requires state Medicaid programs to furnish "family planning services and supplies . . . to individuals of child-bearing age (including minors who can be considered to be sexually active) who are eligible under the State plan and who desire such services and supplies." 42 U.S.C. § 1396d(a)(4)(C).

18. These sections were added to the Social Security Act in 1972. *See* Social Security Amendments of 1972, Pub L. No. 92-603, 86 Stat. 1462. The legislative history makes clear that such services are to be "voluntary and confidential." S. Rep. 92-1230, at 67 (1972).

19. Neither the Social Security Act nor federal regulation define family planning "services and supplies." *See* 42 C.F.R. § 440.40(c) (reserving definition).

20. However, since 1988, Section 4270.B.1 of the State Medicaid Manual ("SMM") has provided that "pharmaceutical supplies and devices to prevent conception" are eligible for FFP at the 90 percent rate.

21. In the following subsection, the Manual goes on to state that FFP at the 90 percent rate is not available for "costs related to" procedures "performed for medical reasons," such as a hysterectomy or removal of an intrauterine device due to infection. That section explains that "[o]nly items and procedures clearly provided or performed for family planning purposes may be matched at the 90 percent rate." SMM § 4270.B.2.

**The CMS Financial Management Review Guide for Family Planning Services**

22. CMS has periodically published a "Financial Management Review Guide" ("Review Guide") governing "reviews of claims for family planning services." There are versions of the Review Guide from 1991, 2002, and 2010. The 2002 Review Guide was the version applicable during calendar year ("CY") 2009, the first year at issue in this matter, and the 2010 Review Guide was the version applicable during CY 2010, the second year at issue.

23. Both applicable versions of the Review Guide include a review of the statute, the legislative history, CMS guidance to States and regional offices on family planning issues, and HHS Departmental Appeals Board decisions involving claims for family planning.

24. Both versions of the Review Guide state that the process for determining which services qualify as family planning "is based on and driven primarily by procedure code." The appendices include lists of the Current Procedural Terminology ("CPT") and Healthcare Common Procedure Coding Systems ("HCPCS") codes[1] that should "always" be considered a family planning service and those which are "never" a family planning service. The Review Guides also note that there are some services which "may or may not represent" a family planning service.

25. The 2010 Review Guide Appendices designate the following CPT/HCPCS codes as "always considered family planning" services: contraceptive cervical caps (A4261), contraceptive intrauterine devices (J7300), female condoms (A4268), male condoms (A4267) and contraceptive pills (S4993). The Guide states that "[a]ll claims paid under Category III codes [*i.e.*, codes categorized as "always considered family planning"] can be properly reimbursed at 90-percent FFP."

26. The Review Guides note that "[t]he majority of the pharmaceuticals covered as a family planning service at 90-percent FFP are medications used for birth control or for the stimulation of ovulation in infertile women. Other medications covered at 90-percent FFP are those required incidental to or as a part of a procedure done for family planning purposes (e.g., pain medications following a sterilization procedure)."

## FACTUAL BACKGROUND

27. Missouri, for decades, has claimed all contraceptive pharmaceuticals for reimbursement at the 90 percent federal match rate for family planning. The State uses

---

[1] CPT (also referred to as HCPCS Level I) is a standardized coding system developed by the American Medical Association and used by health care providers to describe medical, surgical, and diagnostic services provided. HCPCS Level II is used to identify products, supplies, and services not included in the CPT codes.

6

contraceptive therapeutic class codes to determine if a drug claim qualifies as a contraceptive pharmaceutical.

28. Upon information and belief, this is the process used by virtually all States in claiming federal financial participation for the cost of contraceptive drugs.

29. From October 2012 through August 2013, the HHS Office of Inspector General ("OIG") reviewed Missouri's family planning drug claims made in CYs 2009 and 2010. *See* HHS OIG, *Missouri Did Not Always Correctly Claim Costs for Medicaid Family Planning Drugs For Calendar Years 2009 and 2010*, A-07-12-01118 (January 2014).

30. The OIG did not follow the methodology set forth in the CMS Financial Management Review Guide for family planning services. Instead, the OIG auditors selected a random sample of prescribed contraceptive drug claims and then contacted the prescribing providers to determine "whether the drug on the sampled claim was prescribed for a family planning purpose." *Id.* at App. B at 2.

31. In its final audit report issued January 28, 2014, the OIG questioned 23 of the 107 sampled family planning drug claims it reviewed because the OIG's investigation of the prescribing providers and the medical records showed that the contraceptive drug had been prescribed for other than family planning purposes, or because the OIG was not able to determine the purpose of the prescription. All 23 questioned claims were for contraceptive drugs prescribed to females of child-bearing age.

32. Based on an extrapolation of the 23 claims in the sample, the OIG concluded that Missouri "received at least $487,351 in unallowable Federal reimbursement" with the respect to the two years under review, because "the State agency's internal controls automatically classified

contraceptive drugs as family planning services even in cases when the medication in question may have been prescribed for another (non-family planning) purpose." *Id.*, at 3.

33. By letter dated March 2, 2018, CMS disallowed $487,351 in FFP based on the OIG audit findings for the family planning prescription drugs Missouri claimed during CY 2009 and CY 2010. Ex. 1. The disallowance amount represents the difference between 90 percent federal financial participation and reimbursement at the federal medical assistance percentage.

34. DSS appealed the disallowance.

### The Departmental Appeals Board Disallowance Decision

35. On October 13, 2020, the HHS Departmental Appeals Board issued a decision sustaining the disallowance of $487,351 for contraceptive drugs Missouri claimed at the 90 percent FFP rate for family planning during CYs 2009 and 2010. *See Missouri Dept's of Soc. Servs.*, DAB No. 3019 (2020). In its decision, the Board agreed with HHS that "prescription contraceptive drugs are ineligible for 90 percent FFP unless the drugs were prescribed for a family planning purpose[.]" *Id*. at 8. Accordingly, the Board upheld the disallowance because Missouri "did not proffer documentation or other evidence verifying that the sample claims . . . were for contraceptive drugs that had been sought or prescribed for a family planning purpose." *Id*. at 11.

36. Because diagnosis codes are not submitted as part of a prescription for contraceptives, the Board's decision has ongoing implications for the State's claiming practices.

### COUNT I
### (Administrative Procedure Act: Violation of the Medicaid Statute and Regulations and Arbitrary and Capricious Agency Action)

37. Paragraphs 1 through 36 above are incorporated herein by reference.

38. The Defendants' decision that "a prescription contraceptive drug is reimbursable at the 90 percent rate only if it was provided for a family planning purpose" is arbitrary and capricious, an abuse of discretion, and contrary to law.

## COUNT II
### (Administrative Procedure Act: Violation of the Medicaid Statute and Regulations and Arbitrary and Capricious Agency Action)

39. Paragraphs 1 through 38 above are incorporated herein by reference.

40. The Defendants' decision upholding the disallowance of Missouri's CYs 2009 and 2010 family planning drugs claims—which was based on the Defendants' position that prescriptive contraceptive drugs are reimbursable at the 90 percent rate only if provided for a family planning purpose—is arbitrary and capricious, an abuse of discretion, and contrary to law.

### REQUEST FOR RELIEF

WHEREFORE, Missouri requests that this Court grant the following relief:

A. Set aside HHS Departmental Appeals Board Decision No. 3019 and the underlying disallowance upheld by that decision;

B. Permanently enjoin Defendants and their agents, employees, successors in office, and all persons acting in concert or participation with them, from disallowing the $487,351 at issue;

C. Award Missouri such declaratory and other relief as may be just and proper;

D. Award Missouri the costs of this action, including attorneys' fees; and

E. Retain jurisdiction over this action for such additional and supplemental relief as may be required to enforce the order and judgment.

          Respectfully submitted,

          <u>/s/ Caroline M. Brown</u>
          Caroline M. Brown (D.C. Bar No. 438342)
          Rebecca E. Smith (D.C. Bar No. 166610)
          Brown & Peisch PLLC
          1233 20th Street NW, Suite 505
          Washington, DC 20036
          (202) 499-4258
          cbrown@brownandpeisch.com
          resmith@brownandpeisch.com

          *Attorneys for Missouri Department of Social Services*

December 11, 2020